DECISION
Before this Court are the consolidated appeals of Beechwood Enterprises, Inc. ("Beechwood") from two decisions of the Town of Charlestown Zoning Board of Review sitting as the Platting Board of Review and Appeals ("Board"). Appellees Patricia Sprague and Carolina Compact, LLC ("Intervenors") are abutting property owners who have intervened in each appeal.
The Board's first decision, filed November 9, 2006, reversed a decision of the Charlestown Planning Commission ("Commission") that had been favorable to Beechwood. Beechwood filed a timely appeal from that decision on November 29, 2006, and that case has been docketed as C.A. No. WC-2006-0717. The Board's second decision, filed August 22, 2007, upheld a subsequent decision of the Commission that was unfavorable to Beechwood. Beechwood filed a timely appeal from that decision on September 7, 2007, and that case has been docketed as C.A. No. WC-2007-0581. On November 14, 2007, this Court ordered that the two appeals be consolidated. Jurisdiction is pursuant to G.L. 1956 § 45-23-71. *Page 2 
 Facts and Travel
Beechwood owns an undivided twenty-eight acre parcel located in a wooded area along Route 112 in Charlestown, Rhode Island, also designated as Lot 82-1 on Assessor's Map 28 (the "property"). The record reveals that Beechwood has been attempting for nearly a decade to subdivide the property into twenty-four separate lots in order to construct a residential development that would be known as Carolina Farms. As suggested by the length of time during which Beechwood has been attempting to win approval for its proposed subdivision, this case has developed a somewhat involved travel.
According to Appellant, it first applied to the Commission for approval of a major subdivision of the property on May 24, 1999. (Detailed Travel of the "Carolina Farms" Applications at 2.) The Commission subsequently directed Beechwood to proceed with plans to create a "cluster subdivision" that would provide for a one-hundred foot buffer around the perimeter of the property. Id. Of particular significance to the current litigation, Beechwood's proposal would have established several stump dumps within the wooded borders of the property. The placement of the stump dumps would have required Beechwood to remove a number of trees from that area of the property. Although Beechwood proposed to cover the stump dumps with grass, its proposal did not include a plan to replace any of the mature trees that would be cut down in those areas. Beechwood's proposal would have also granted several drainage easements in areas on the property's borders.
On January 10, 2002, after holding several public hearings and taking testimony on Beechwood's application, the Commission voted to deny the application in a 3-2 vote. The partial transcript of the Commission's hearing from that date evinces the reasoning behind the opinions of the Commission members who voted to deny the application. (See Carolina *Page 3 
Compact's Opposition to Beechwood's Appeal, Exhibit 11.) Generally speaking, Commission members were concerned that the Narragansett Indian Tribe — which owned land nearby — had not been allowed to access the property to determine whether any artifacts of cultural significance could be found there, and that no archaeological survey had been completed. Members were additionally concerned about emergency access and traffic safety. Id. at 36-41. Significantly, two members specifically stated that they felt the required audio/visual buffer around the property was inadequate. Id. Commission Member Platner stated that "[t]he buffer is not providing a true audio and visual buffer, it is being used for drainage, stump dumps and everything else."Id. at 38. Commission Member Arnold also voted to deny the application and provided as grounds for his vote that "the buffer being used as a stump dump is not proper." Id. at 39. Although not part of the record presented to this Court, the Commission apparently issued a written decision in which it cited the inadequacy of the audio/visual buffer as one of the reasons for its denial.
Beechwood appealed the Commission's adverse decision to the Board. The Board considered Beechwood's appeal on April 15, 2002, and filed a written decision on April 22, 2002. (See Intervenor Patricia Sprague's Response to Appellant's "Brief" at 51-52.) The written decision indicates that the Board voted 5-0 to overturn the Planning Commission's denial of Beachwood's application. The Board further voted, 4-1, to remand the application back to the Planning Commission "for approval" based on certain conditions.
At this point, Intervenors appealed the Board's decision to the Superior Court.[1] A justice of this Court heard the appeal and issued a written decision on September 21, 2004. Although the justice affirmed the Board's decision reversing the Planning Commission's denial of *Page 4 
Beechwood's application, he also addressed issues relating to the required audio/visual buffer around the property. Specifically, the justice found that the Charlestown Zoning Ordinance ("Ordinance") § 218-60.F requires a vegetated perimeter buffer for all residential cluster subdivisions. Moreover, the justice found that the Ordinance requires the buffer be "at least one hundred feet wide around the entire perimeter of all lots to provide a visual and audio screen between adjacent land uses." Ordinance § 218-5.B.
In reviewing the record that the Board had considered, the justice noted that even though the Commission based its denial in part on the lack of an adequate buffer, it had not made any factual findings as to that buffer. The justice therefore found that without any factual findings as to the buffer issue, the Board was unable to assess the adequacy of the Commission's basis for its denial. Thus, the justice determined that the matter must be remanded to the Commission in order to allow it to make the required findings of fact "as to the bufferissue. . . ." Sprague v. Charlestown Zoning Board of Review, WC/2002-0254 and WC/2002-0255, 2004 R.I. Super. LEXIS 166, *47 (emphasis in original).
The justice also provided direction to the Commission, stating that "[o]nly if the stump dump is so visually obtrusive as to constitute a permanent and recognizable disfigurement upon the landscape should the Commission deem it unsatisfactory. . . ." Id. at *46. The justice commented that drainage easements located within the buffer are permissible under the Ordinance but that the Commission had discretion to "determine that any structures included as part of these easements vitiate the intended purposes of the perimeter buffer." Id. The Decision concludes with the statement that "the Court remands this matter to the Board of Appeals for a written decision within 120 days that reviews the written decision of the Planning Commission, after remand to the Planning Commission for findings of fact as to the buffer issue, or for *Page 5 
reconsideration of the issue and approval in accordance with the terms of decision [sic] of the Zoning Board of Appeals." Id. at *47 (emphasis in original). Neither the Decision nor the Final Judgment provided for retention of jurisdiction by the Superior Court.[2]
Pursuant to the Court's order of remand, the Commission took up the issues relating to the vegetative buffer and issued new findings of fact on October 25, 2004. (See Appendix to Intervenor Patricia Sprague's Response to Appellant's "Brief" at 37.) In the preamble to its enumerated findings of fact, the Commission stated that the proposed stump dump would harm the buffer zone in that "[t]he buffer zone itself will be stripped of trees and vegetation to bury the stumps, which will result in the permanent degradation of a 100-foot perimeter buffer intended to create an audio and visual buffer." Id. (Footnote omitted.) The Commission then found as facts that Ordinance § 218-60.F requires a one-hundred foot wide vegetated buffer around the perimeter of the property in order to provide a visual and audio screen between abutting properties. Id. The Commission cited Ordinance § 218-60.H.(2), which provides that "[l]and that has been environmentally disturbed or damaged shall not be accepted for a cluster subdivision until such land is restored to a condition that the Commission determines to be satisfactory to effect the purposes of this section." Id.
Against that backdrop, the Commission found that "[a] 100-foot perimeter buffer is needed to protect the abutters with a visual and audio buffer from the proposed subdivision." Id. at ¶ 4. The Commission further found that the proposed plan "would result in substantial numbers of cut trees and disruption of existing forest and vegetation" and that the plan would "take all the natural debris from the proposed subdivision and dispose of it in the stump dump in the 100-foot wooded perimeter buffer." Id. at ¶¶ 8, 9. The Commission then found that *Page 6 
 [t]o create a stump dump in the buffer zone, the scenic wooded area in the buffer zone must be cut down and excavated to bury all the natural debris generated by 24 lots and the roads that must be built to reach those lots. The quantity of stumps to be buried will destroy the effective wooded 100-foot perimeter buffer that existed before the proposed subdivision plan is implemented. Id. at ¶ 11.
After considering Beechwood's proposal, the Commission noted that "[t]he evidence in the record suggests that at best the applicant plans to reseed the stump dump with grass" and "[g]rass will not replace the mature scenic trees which existed in the buffer zone and provided a visual and audio screen as required by the Zoning Ordinance."Id. at ¶¶ 12, 13. The Commission also believed that "[t]hough the applicant may intend to bury the stumps and maintain the dump in a vegitative [sic] state, the applicant does not intend to replace the mature scenic trees it will remove to create the stump dump."Id. at ¶ 14. The Commission additionally found that "drainage easements, and emergency access in the 100 foot wooded perimeter buffer does not provide a visual and audio buffer to the abutting property."Id. at ¶ 10. The Commission ultimately denied Beechwood's application in its entirety, stating that based on its review of all the evidence
 . . . we find as a fact that the planned stump dump will be so visually obtrusive as to constitute a permanent and recognizable disfigurement upon the landscape, and will not function as a visual screen which the Planning Commission deems unsatisfactory pursuant to The Charlestown Zoning Ordinance Section 218-60.H.(2). Id. at ¶ 15.
Unsurprisingly, Beechwood appealed the Commission's adverse decision to the Board. The Board took up Beechwood's appeal on December 14, 2004, and voted to uphold the Commission's decision in a 4-1 vote. (See Appellant's Brief in Support of Appeal, Appendix Tab 4). The Board issued a written decision dated December 23, 2004, reflecting its findings. Id. The decision indicates that the Board upheld the Commission's "determination not to issue a *Page 7 
`certificate of approval' for a 24 lot major subdivision as requested by Beechwood Enterprises . . . along with the Planning Commission finding of facts dated October 25, 2004." Id.
The Board found that the Commission "did what the Judge has asked them to do" and that "[t]hey revisited the issue and they have found and identified a reasonable amount of evidence to support their position."Id. The Board noted that the Commission's findings were valid because they were based upon evidence found within Ordinance § 218-60 and testimony provided by various witnesses, along with reference to Commission minutes from earlier meetings, the subdivision plan itself, and the Superior Court Decision ordering a remand. Id. Finally, in affirming the Commission's decision, the Board identified five of the Commission's numbered findings of fact with which the Board specifically agreed. Id. Although the date stamp is not highly legible on the copy of the written decision provided to this Court, it appears as though the Board filed its decision on December 27, 2004.
Beechwood did not appeal the Board's decision to this Court within the twenty day period provided for in § 45-23-71.[3] Beechwood did, however, file a motion to compel filing of the certified record on January 25, 2005. The Court held a hearing on the motion on January 28, 2005, and the parties have submitted a transcript of the proceeding. (See Carolina Compact's Opposition to Beechwood's Appeal, Exhibit 1 or "Tr.")
Beechwood's counsel presented her interpretation of the Court's prior decision and stated that the case had been previously decided in September 2004 "with the exception of one issue that was remanded back to the Zoning Board of Review and then remanded back to the Planning Commission and for it to make its way back up to your Honor on the issue of the `stump-dump' so-called." (Tr. at 1.) Attorney Singer appeared on behalf of Intervenor, Carolina Compact, LLC, and objected to the motion, taking the position that the Court's September 2004 Decision *Page 8 
"terminated" the Court's jurisdiction and that Beechwood would be required to file a new appeal if it was aggrieved by the Commission's ultimate denial of their subdivision application. Id. at 2. Attorney Singer also argued that granting the motion would act as a "de facto" appeal beyond the period provided for by law. Id. The following colloquy ensued:
 THE COURT: I don't see where the Court specifically retained jurisdiction.
 MS. HOGAN: I would suggest, you indicated that the case would be remanded back all the way down and back up to you within 120 days for a final determination.
 THE COURT: I see it remanded down. I don't see it back up.
 MS. HOGAN: The 120 days, your Honor, bring the decision back to this Court within 120 days.
 MR. SINGER: It doesn't say that. It orders the Zoning Board of Review to enter a written decision within 120 days.
 * * * THE COURT: I think the question fairly is whether the Court has jurisdiction to consider this case in the situation that it's in now. Is that agreed that's what the issue is right now?
 MR. SINGER: I think it is your Honor.
 MS. HOGAN: I think that's become the issue. Id. at 3-6.
The Court reserved its decision on the jurisdictional issue and gave Beechwood until February 25, 2005, to file an initial brief.Id. at 6. A review of the Court's file for that case shows that Beechwood did not file a brief and in fact withdrew its motion on February 25, 2005. Final Judgment was entered on June 28, 2005, the text of which solely reflects the Court's September 2004 Decision and does not mention any of the issues raised at the subsequent hearing held on January 28, 2005.
Meanwhile, its failure to win approval of its proposal notwithstanding, Beechwood "commenced tree removal in some areas of the site and excavation of the road bed." (Appellant's Brief in Support of Appeal at 5.) Beechwood then filed revised site plans on August 24, 2005, and "also commenced the removal of stockpiled vegetative debris (which was originally slated for burial in the stump dumps) from the site." Id. at 7. It is uncontested that the *Page 9 
Town had not issued Beechwood a certificate of approval at the time Beechwood began its work, nor has such a certificate been issued since that time.
Mr. James Lamphere, the Town's Planner, sent Attorney Hogan a letter dated September 15, 2005, indicating that he had received the revised plans as well as other correspondence indicating that Beechwood had begun road construction at the property. (Detailed Travel of the "Carolina Farms" Applications, Tab 2.) Mr. Lamphere asked Attorney Hogan to provide "clarification on the purpose of submitting these additional sets of plans" and to "elaborate on the purpose and nature of the work occurring on this property." Id. Mr. Lamphere also requested that Attorney Hogan communicate to him her "understanding regarding the current status of the Carolina Farms subdivision application."Id.
Attorney Hogan responded with a letter dated September 26, 2005, in which she takes the position that the Court's September 21, 2004, Decision required the Commission to grant approval of the application with the exception of the stump dump issue. (Detailed Travel of the "Carolina Farms" Applications, Tab 3.) According to Attorney Hogan's interpretation, the Commission's October 2004 decision did not result in a denial of the entire application; rather, Beechwood's application was approved with the exception of the stump dumps. Id. Attorney Hogan indicated that the revised plans filed at the end of August removed the stump dumps and that "[s]ince my client has agreed to remove the permanent disposal sites, especially since they are not required by the subdivision regulations, there is nothing left in dispute."Id. She concluded with an assertion that any further approvals are "merely ministerial" acts which must be done in accordance with the Court's decision. Id. Responding to Mr. Lamphere's concerns as to the alleged construction, Attorney Hogan stated that Beechwood "is preparing the road bed *Page 10 
for inspection purposes by the Director of Public Works, in accordance with the subdivision regulations and clearing up vegetative debris."Id.
Attorney Hogan's response did not allay the concerns of Town officials. Mr. John Matuza, the Town Building Official, sent Attorney Hogan a letter of violation dated September 29, 2005. (Detailed Travel of the "Carolina Farms" Applications, Tab 4.) Mr. Matuza stated that Beechwood's work in preparing the road bed for inspection purposes violated Ordinance § 218-59, which provides that "[n]o construction or sale of lots within a residential cluster subdivision shall begin until the plan of such has been approved by the Charlestown Planning Commission according to the Charlestown Subdivision Regulations."Id. Mr. Matuza then informed Attorney Hogan that because her client "does not have an approved preliminary plan, they [Beechwood] must cease the road construction at the subject site immediately" or face possible fines of up to $500 for each day of violation. Id.
Beechwood did not appeal Mr. Matuza's finding of a violation of the Ordinance, but instead chose to re-file its application for subdivision approval with the Commission. The revised plans show that stump dumps are no longer planned to be placed within the one hundred foot area bordering the property. (See Carolina Compact's Opposition to Beechwood's Appeal, Exhibit 3 and compare Soil Erosion Plan for Carolina Farm dated March, 2001 (showing the presence of three "permanent disposal areas" within the buffer) with Soil Erosion Plan for Carolina Farm revised August 2005 (showing no permanent disposal areas within the buffer).) The Commission accepted the revised plans and began to address the new application at the "pre-application" stage of review. (Appellant's Brief in Support of Appeal at 8.) Intervenors appealed the Commission's acceptance of the application to the Board, arguing that any consideration of the revised plans was precluded by the doctrine of administrative finality. Id. *Page 11 
On May 9, 2006, the Board reversed the Commission's acceptance of the revised plans after a unanimous vote. (Carolina Compact's Opposition to Beechwood's Appeal, Exhibit 5.) The Board found that the Commission incorrectly applied the doctrine of administrative finality in that it accepted the plans after determining that they were not identical to those that had previously been submitted. Id. The Board instructed the Commission members that they must analyze not whether the successive applications are identical, but whether they are substantially similar.Id. The Board also noted that if the Commission determined the revised application to be substantially similar to Beechwood's original application, the doctrine of administrative finality would bar its consideration unless Beechwood demonstrated a material change in circumstances. Id. The Board remanded the matter back to the Commission for application of what it considered to be the correct legal standard.Id.
The Commission considered the issue once again at its meeting on July 6, 2006. Chairman Rohm stated that "the question is, is the application, which has been submitted, which is the one that you reviewed previously, substantially similar or not." (Appellant's Brief in Support of Appeal, Exhibit 2 at 2-3.) He later instructed Commission members that they must decide for themselves whether each member could "come to terms with the change in terminology from identical to substantially similar."Id. at 12. The Chairman also read a letter from the Town's interim town planner, Mr. David Schweid, in which Mr. Schweid indicated that he had compared Beechwood's two applications and noted the differences between them as follows:
 No. 1, [o]n the current submitted plans, the cover sheet has a revision date of 8/18/05, and Sheet 8 has a revision date of August, 2005 added. No. 2, the three `permanent disposal areas,' (stump dumps) shown on the original submittal on Sheet 8, then reduced to two on the June 2002 submittal, have all been deleted on the current submittal. Id. at 4-5. *Page 12 
Commission Member Platner informed the rest of the Commission that certain clearing activities had occurred on the property, as reflected in aerial photographs available to the public on the University of Rhode Island's internet site. Id. at 6. Ms. Platner stated that the clearings on the property are "huge" in that they are "bigger and wider than the church parking lot."[4] Id. She also stated that "[t]he abutters have lost the benefit of the buffer because it's been removed in those areas; I've lived in Carolina for six years. I know the land very well. . . ."Id. Ms. Platner eventually voted to bar the application on the basis of administrative finality because she did not find there to be any material changes between the successive applications. Ms. Platner summed up her concerns as follows:
 [t]he issue of the perimeter buffer in this case concerned the loss of an audio and visual buffer. Removing one stump dump from the plan has not restored the audio and visual buffer. For one thing, the stump dump still exists at the site. Removing it from the plan did not cause the forest to regrow, and the plan still shows other large clearings in the buffer zone. . . . A material change would be to address the abutter's concerns for an audio and visual buffer and show a perimeter buffer without large areas of clearing, both on the plans and on the ground. This plan does not show a material change as to the buffer issue. Id. at 23-24.
Commission Member Johnson stated that he had voted at the earlier meeting to allow Beechwood's new application to proceed because the removal of the stump dump from the plans meant that it was not identical to the first application. Id. at 9. Dr. Johnson commented that in remanding the issue to the Commission, the Board instructed the Commission to bar the new application if it was substantially similar to the first one. Id. He then concluded that "if the legal standard is that it's just similar issues rather than absolutely identical, then the issues are similar." Id. Later in the hearing, Dr. Johnson opined that "[t]he retention basins are all still in *Page 13 
the buffer area, so the lack of an audiovisual buffer still makes this a substantially similar situation to the previous applications."Id. at 27.
Commission Member Ulricksen initially said that in his opinion "when you take those three stump dumps out, regardless of what it looks like, I say it is not substantially similar." Id. at 9. Mr. Ulricksen's further opined that "if you take those three stump dumps out that is a big material change." Id. He later made a motion to find that "this application is not substantially similar, nor is it identical because the elimination of the stump dump constitutes a major material change in circumstances." Id. at 31.
Commission Member Bemis stated that "I agreed with Neil [Ulricksen] before and this is what the whole contention on the stump dump is."Id. at 10. He asked, "[i]f you take them out [the stump dumps], how can you call them the same?" Id. He queried further: "[y]ou've eliminated what was supposedly the problem, so how can you call it the same? It makes no sense to me." Id. After hearing Ms. Plantner's extensive proposed findings of fact, he once again stated "I have to agree with Neil [Ulricksen]," who — as noted above — had taken the position that the second application demonstrated a material change from the first application. Id. at 28.
Chairman Rohm expressed his belief that when the Superior Court entered its order requiring a remand of Beechwood's application "it was the stump dumps only that the court was sending the application back to the zoning board." Id. at 29. The Chairman then commented that Beechwood's new application removed the one ground upon which its first application had been denied on October 25, 2004, thereby constituting a substantial change in the application. Id. According to the Chairman, "to say the removal of that one issue is not a substantial change, to me, flies in the face of common sense." Id. *Page 14 
Mr. Ulricksen ultimately made a motion to find "that this application is not substantially similar, nor is it identical because the elimination of the stump dump constitutes a major material change in circumstances." Id. at 31. Mr. Bemis then seconded the motion.Id. at 32. Mr. Bemis, Mr. Ulricksen, and Chairman Rohm voted to approve the motion while Ms. Platner and Dr. Johnson voted to deny.Id. Thus, the majority of the Commission found in a 3-2 vote that Beechwood's second application "is not substantially similar, nor is it identical" due to the removal of the proposed stump dumps from the application.
Predictably, Intervenors appealed this decision to the Board, arguing that the Commission still had not correctly applied the doctrine of administrative finality. The Board held lengthy hearings on the appeal on August 29, 2006, and October 23, 2006. The Board's November 9, 2006 decision indicates that the Board once again found — after a 5-0 vote — that the Commission had failed to correctly apply the doctrine of administrative finality in that "the Commission erroneously used the identical standard and not substantially similar standard." (Carolina Compact's Opposition to Beechwood's Appeal, Exhibit 6, Zoning Board Decision, November 9, 2006.) The Board therefore found that the Commission "committed clear error as it did not apply the proper legal standard for Administrative Finality," and remanded the matter for application of the correct standard.[5] Id.
At this point, Beechwood appealed the Zoning Board's November 9, 2006, decision to this Court. That case has been docketed as C.A. No. WC-2006-0717. On April 16, 2007, another justice of this Court stayed Beechwood's appeal in order to allow the Commission to comply with the Zoning Board's instructions and render a final decision. On June 20, 2007, the *Page 15 
Commission — whose membership had changed in the interim[6] — voted 3-2 to bar Beechwood's application based on administrative finality. The Zoning Board upheld the Commission's determination as reflected in its written decision filed August 22, 2007. Beechwood filed a timely appeal from the August 22, 2007, decision with this Court and the case was docketed as C.A. No. WC-2007-0581. This Court consolidated the two appeals on November 14, 2007.
 Standard of Review
Rhode Island General Laws 1956 § 45-23-71 provides this Court with the specific authority to review decisions of a town zoning board sitting as the board of appeals from decisions of the town planning board. Under § 45-23-71(c), this Court has the power to affirm, reverse or remand a decision of the board of appeals. In conducting its review, "[t]he court shall not substitute its judgment for that of the planning board as to the weight of the evidence on questions of fact." Section 45-23-71(c). This Court may reverse or modify the board of appeals' decision
 (c) . . . if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the planning board by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Id.
Thus, this Court is not permitted to conduct a de novo review of a decision of a town's board of appeals. Munroe v. Town of EastGreenwich, 733 A.2d 703, 705 (R.I. 1999). This *Page 16 
Court must not "consider the credibility of witnesses, weigh the evidence, or make its own findings of fact." Id. Instead, this Court must limit its review to "a search of the record to ascertain whether the board's decision rests upon `competent' evidence or is affected by an error of law." Id. (quoting Kirby v. Planning Board of Review ofMiddletown, 634 A.2d 285, 290 (R.I. 1993)). Additionally, § 45-23-71(c) requires the Court to conduct its review of the proceedings before a municipality's planning board or planning commission — not the board of appeals — in determining whether the decision of the planning board is supported by competent or substantial evidence.
Competent evidence is functionally equivalent to the term "substantial evidence." Town of Burrillville v. R.I. State Labor Rels. Bd.,921 A.2d 113, 118 (R.I. 2007). Substantial evidence is relevant evidence that a reasonable person would accept as adequate to support the board's conclusion and amounts to "more than a scintilla but less than a preponderance." Pawtucket Transfer Operations, LLC v. City ofPawtucket, 944 A.2d 855, 859 (R.I. 2008) (quoting Caswell v. GeorgeSherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981)). In short, a reviewing court may not substitute its judgment for that of the board of appeals if it "can conscientiously find that the board's decision was supported by substantial evidence in the whole record." Mill RealtyAssocs. v. Crowe, 841 A.2d 668, 672 (R.I. 2004) (quoting Apostolou v.Genovesi, 120 R.I. 501, 509, 388 A.2d 821, 825 (1978)). While the appellate court must defer to an administrative agency's determination of the facts, its resolution of a question of law is reviewed de novo.Johnston Ambulatory Surgical Associates. v. Nolan, 755 A.2d 799, 805
(R.I. 2000).
Rhode Island General Laws 1956 § 45-23-70, in turn, establishes the standard of review that the board of appeals must apply when reviewing planning commission decisions. That statute provides, in pertinent part, that *Page 17 
 (a) . . . the board of appeal shall not substitute its own judgment for that of the planning board . . . but must consider the issue upon the findings and record of the planning board. . . . The board of appeal shall not reverse a decision of the planning board . . . except on a finding of prejudicial procedural error, clear error, or lack of support by the weight of the evidence in the record. Section 45-23-70(a).
Thus, just as this Court's review of the board of appeals' decision is highly circumscribed, so too is the board of appeals required to afford deference to decisions made by the town's planning commission.
 Analysis
The parties have addressed their legal arguments solely to the Board's November 9, 2006, decision remanding Appellant's subdivision application to the Commission for application of the doctrine of administrative finality. None of the parties has briefed any issues specifically directed to the Board's August 22, 2007, decision that affirmed the Board's subsequent denial of Beechwood's application. However, the Court's decision pertaining to the Board's November 9, 2006, decision remanding the matter to the Commission is dispositive and renders consideration of the Board's August 22, 2007, decision unnecessary.
Beechwood presents this Court with several arguments in support of its position that the Board's November 9, 2006, decision should be reversed. Beechwood first argues that its appeal is properly before this Court as the Board's decision is ripe for judicial review. Beechwood then argues that neither the Commission nor the Board possess the necessary statutory authority to apply the doctrine of administrative finality to successive subdivision applications. In the alternative, Beechwood argues that if administrative finality can be applied to subdivision applications, Beechwood's second application demonstrated a material change in circumstances. Beechwood also contends that the Commission correctly applied that doctrine to its application *Page 18 
by using a substantially similar standard, rather than an identical standard. Therefore, according to Beechwood, the Board erred in reversing the Commission's determination as it substituted its own judgment for that of the Commission.
In rejoinder, Intervenors — writing separately but raising the same general arguments — contend that Beechwood's appeal of the November 9, 2006, decision is not ripe for review as Beechwood has yet to exhaust all available administrative remedies. According to Intervenors, the Board's decision ordered only a remand to the Commission and as such does not constitute a final decision that may be appealed to this Court. As to exhaustion of administrative remedies, Intervenors argue that Beechwood should only be permitted to obtain judicial review of the Board's later decision filed on August 22, 2007.
In the event that the Court does review the Board's November 9, 2006, decision ordering a remand to the Commission, Intervenors contend that the doctrine of administrative finality applies to successive applications for subdivision approvals. Intervenors further posit that the doctrine is judicially created and as such can be applied by the Commission and the Board even in the absence of strict statutory authorization. According to Intervenors, the Commission applied the standard incorrectly as it allowed the application to proceed after determining that the applications were not identical rather than making a finding that they are not substantially similar. Intervenors also argue that Beechwood failed to demonstrate any substantial change of circumstances between its successive applications and urge this Court to uphold the Board's November 9, 2006, decision remanding the matter for further hearings on the applicability of the doctrine. *Page 19 
 Ripeness and Exhaustion of Remedies
By raising the doctrines of ripeness and exhaustion of remedies, Intervenors essentially argue that Beechwood is not entitled to seek judicial review of the Board's November 9, 2006, decision. According to Intervenors, Beechwood has no right to appeal the Board's decision because that decision was not a reviewable final decision but rather only remanded the matter back to the Commission for further proceedings. Intervenors urge this Court to find that it is the Board's later August 22, 2007, decision which represents the Board's final ruling on the doctrine of administrative finality and upon which this Court should base its review.
Although Intervenors have raised the doctrines of ripeness and exhaustion of administrative remedies, the Court notes at the outset that the Development Review Act, G.L. 1956 § 45-23-25 et seq., ("Act") provides an aggrieved party with certain statutory appeal rights. In interpreting the Development Review Act to determine whether it grants a party a right to appeal certain decisions, the Court bears in mind that its duty is to "first attempt to see whether or not the statute in question has a plain meaning and is therefore unambiguous."Chambers v. Ormiston, 935 A.2d 956, 960 (R.I. 2007). If a statute is not ambiguous the court is to "simply apply that plain meaning to the case at hand." Id. Otherwise stated, "when the language of a statute is clear and unambiguous, [the reviewing court] must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." State v. Santos, 870 A.2d 1029, 1032 (R.I. 2005) (quoting Accent Stone Design, Inc. v. Marathon House, Inc.,674 A.2d 1223, 1226 (R.I. 1996)). Thus, when a court examines an unambiguous statute, there is "no room for statutory construction and [the court] must apply the statute as written." Id. (quoting State v. DiCicco,707 A.2d 251, 253 (R.I. 1998) (further citations omitted)). *Page 20 
Turning to the relevant provisions of the Development Review Act, § 45-23-66 plainly directs municipalities to adopt regulations that provide that "an appeal from any decision of the planning board . . . may be taken to the board of appeal by an aggrieved party." (Emphasis added.) The Development Review Act further provides that "[a]n appeal to the board of appeal from a decision or action of the planning board or administrative officer may be taken by an aggrieved party to the extent provided in § 45-23-66." Section 45-23-67(a). That party's appeal "shall be in writing and state clearly and unambiguously the issue or decision which is being appealed." Section 45-23-67(b). Thus, the Court finds that the plain language of the Development Review Act entitles a party to appeal any decision or action of a municipality's planning board to the board of appeals.
After an appeal from the planning commission has been filed with the board of appeals, it "shall hold a public hearing on the appeal within forty-five days." Section 45-23-69(a). The board of appeals is then required to "render a decision within ten (10) days of the close of the public hearing." Id. Any party that is aggrieved by the decision of the board of appeals "may appeal a decision of the board of appeal, to the superior court." Section 45-23-71(a). Based on the clear language employed in the Act, the Court finds that a party aggrieved by the outcome of an appeal to the board of appeals is specifically afforded the right to seek judicial review in the Superior Court.[7]
Here, Intervenors appealed the Commission's July 6, 2006, decision to allow Beechwood's subsequent application for a cluster subdivision to proceed, as they were explicitly entitled to do under § 45-23-67(a). The Board then held the required hearings on Intervenors' *Page 21 
appeal and issued its November 9, 2006, decision remanding the matter back to the Commission. At this point Beechwood asserted that it was aggrieved by the Board's decision and appealed to this Court pursuant to § 45-23-71(a). The record shows that the statutory appeal procedures contained in the Development Review Act were followed precisely and, therefore, the Court finds that Beechwood is entitled to seek judicial review of the Board's November 9, 2006, decision. See Tanner v. TownCouncil, 880 A.2d 784, 792 (R.I. 2005) ("A party acquires standing either by suffering an injury in fact or as the beneficiary of express statutory authority granting standing.").[8] Therefore, the Court finds that Beechwood's appeal of the Board's November 9, 2006, decision is properly before it.
 The Doctrine of Administrative Finality Generally
Our Supreme Court has given extensive treatment to the doctrine of administrative finality in the case of Johnston Ambulatory SurgicalAssociates v. Nolan., 755 A.2d 799 (R.I. 2000). The Court stated that the doctrine requires that "when an administrative agency receives an application for relief and denies it, a subsequent application for the same relief may not be granted absent a showing of a change in material circumstances during the time between the two applications."Id. at 808 (citing Audette v. Coletti, 539 A.2d 520, 521-22 (R.I. 1998)). However, the doctrine applies only to final administrative decisions and; thus, has no application "if the first decision was invalid." Id.
The doctrine of administrative finality is operative in cases where an applicant is seeking a "substantially similar outcome from an administrative agency." Id. at 809. Moreover, the applicant bears the burden "to identify the substantial changes since the prior application." Id. at *Page 22 
811. The agency is also required "to articulate in its decision the specific materially changed circumstances that warrant reversal of an earlier denial of the relief sought." Id.
The Supreme Court has also explained the importance of the doctrine in that it "prevents repetitive duplicative applications for the same relief," which conserves the scarce resources of both the administrative agency and third parties who intervene to oppose the granting of relief.Id. at 810. The doctrine prevents an administrative agency from arbitrarily and capriciously reversing its previous decisions "while still preserving the ability of an agency to revisit earlier decisions when circumstances have changed." Id. It also aids judicial review of agency decisions by requiring the agency to "articulate the changed circumstances that support a different decision on a subsequent application." Id.
The Court delineated two broad types of substantial material changes that would allow an agency to grant a subsequent application for similar relief on the basis of changed circumstances. The Court first stated that the "changed circumstances could be internal to the application, as when an applicant seeks the same relief but makes important changes in the application to address the concerns expressed in the denial of its earlier application." Id.; see also May-Day Realty Corp. v. Board ofAppeals of Pawtucket, 107 R.I. 235, 237, 267 A.2d 400, 402 (1970) (Where the applicant's first petition sought approval to construct two ten-family apartment houses while the second contemplated a single one-hundred unit apartment building with underground parking for 125 automobiles, "the two are so dissimilar that the doctrine of administrative finality is inapplicable."). On the other hand, "external circumstances could have changed, as when an applicant for a zoning exception demonstrates that the essential nature of land use in the immediate vicinity has changed since the previous application."Id. Plainly then, an administrative agency presented with a successive application for the same relief must *Page 23 
determine whether the application itself is materially different from the first application, or if the facts and circumstances on the ground have changed sufficiently to allow the grant of a successive application.
As a threshold matter, the Court has considered Beechwood's arguments that the doctrine of administrative finality should not generally apply to subdivision applications and has found them unconvincing. The Court's review of our Supreme Court's cases dealing with the doctrine indicates that it is one of general applicability and that it is especially well-established in the context of litigation surrounding questions of land-use. See generally Churchill v. Zoning Bd. of Review, 98 R.I. 302,201 A.2d 480 (1964); May-Day Realty, 107 R.I. 235, 267 A.2d 400;see also Johnston Ambulatory Surg. Assoc., 755 A.2d at 810 ("[T]here is no inherent reason that the rule should not be generally applicable to most areas of administrative regulation" in order to "promote consistency in administrative decision-making.). Moreover, the Court finds that application of administrative finality to the subdivision process promotes the goals of the doctrine that the Supreme Court enumerated in Johnston Ambulatory Surgical Associates., supra.
Beechwood has also argued that neither the Rhode Island Zoning Enabling Act of 1991, codified at G.L. 1956 § 45-24-27 et seq., nor the Ordinance specifically empowers the Commission to apply administrative finality to successive applications for subdivision approval. As support for this proposition, Beechwood cites a provision of the Ordinance that addresses "repetitive petitions" to the Town Council for an amendment to the Ordinance. Ordinance § 218-18. The section that Beechwood relies on specifically states that
 [w]here the Town Council or Zoning Board denies an application, the Council or Board shall not consider another application for the same request for a period of one year. The Town Council or Zoning Board may accept a new application after six months, provided that the application that [sic] is accompanied by an *Page 24 
affidavit setting forth facts showing a substantial change of circumstances. Ordinance § 218-18.
According to Beechwood, this explicit grant of authority to the Town Council and the Board precludes the Commission from denying "the submission of an application for subdivision for the same property, regardless of whether the applications are similar or not." (Appellant's Brief in Support of Appeal at 25.)
Beechwood's reliance on Ordinance § 218-18 is misplaced because examination of the Ordinance reveals that the section is limited to applications for an amendment to the Ordinance that would change the use designation of a particular lot or lots. Section 218-18 is codified in Article III of the Ordinance, entitled "Amendments Procedure," and § 218-15 indicates that the provisions apply to "specific" and "general" proposed amendments that, if approved, would require a change in the Town's zoning map to reflect a parcel's new use designation. The Ordinance further provides that the only role of the Commission is to render an advisory opinion to the Town Council and that, unlike the subdivision review process, the Commission has no authority to deny a petition to amend the Ordinance.[9] Ordinance § 218-16A ("The Planning Commission shall file with the Town Council an advisory opinion on all proposed amendments to this Ordinance. . . . [T]he Town Council shall consider such advisory opinion but shall not be bound by such."). Based on its reading of the plain language of the Ordinance, the Court finds that — far from establishing general requirements for every successive application that could be filed with the Board or the Commission — Ordinance § 218-18 applies only to successive requests to change a parcel's zoning designation via an amendment to the Ordinance. Therefore, *Page 25 
the Court finds that Ordinance § 218-18 has no relevance to the issue of whether or not the Commission has the authority to apply the doctrine of administrative finality.
Although Beechwood's reliance on Ordinance § 218-18 is unavailing, the Court must still address its more general contention that the Commission may not apply administrative finality because it is not specifically empowered to limit successive applications under the Ordinance provisions relating to residential cluster subdivisions. See Ordinance §§ 218-58, 218-59 and 218-60. Beechwood's argument is unconvincing because it fails to recognize that the doctrine of administrative finality is a "judicial doctrine," rather than a requirement laid out in the Zoning Enabling Act of 1991 or a municipal zoning ordinance.Johnston Ambulatory Surg. Assoc., 755 A.2d at 807. The Court in that case implicitly authorized administrative agencies to apply the doctrine by placing the burden on an applicant to demonstrate a material change in circumstances in the first instance, as well as a concomitant burden on the administrative decision maker to "articulate the changed circumstances that support a different decision on a subsequent application." Id. at 810. Whether an applicant has demonstrated a material change in circumstances is a decision that is first entrusted to the agency, not to the board of appeals or a reviewing court.Id. at 812. Therefore, based on the Court's reading of our Supreme Court's precedent — along with Beechwood's failure to cite any authority to the contrary — the Court finds that administrative agencies such as the Commission are empowered to apply the doctrine of administrative finality when considering successive applications for the same or similar relief.
The Court also finds that even if it were to accept Beechwood's contention, an administrative agency would still be required to make a finding as to a material change of circumstances pursuant toJohnston Ambulatory Surgical Associates. Under Beechwood's interpretation of the law, an administrative agency that found that an applicant did not meet its *Page 26 
burden would nevertheless be powerless to summarily bar the application — despite it being clear that the agency has no discretion to reverse its prior decision. The administrative agency would then be bound to go through the entire decision-making process, including the holding of public hearings and the taking of evidence, even though the ultimate outcome had been preordained. This would quite clearly be absurd, and the Court will not countenance interpreting a judicial doctrine in such a way as to create an absurd result. See Jeff Anthony Props. v. ZoningBd. of Review, 853 A.2d 1226, 1230 (R.I. 2004) (wherein our Supreme Court reaffirmed that it will not interpret a statute in a way that will create an absurd result).
Given all of the foregoing, this Court finds that the doctrine of administrative finality does apply to successive applications for subdivision approval. Moreover, the Court finds that the Commission is empowered to apply that doctrine when presented with successive applications seeking a similar outcome. The Court is satisfied that all of Beechwood's arguments to the contrary are without merit.
Before considering whether the Commission applied the doctrine correctly, the Court must first determine whether it would apply at all in this case. The Court finds that there can be no doubt that the two successive applications at issue here seek the same outcome. Specifically, Beechwood has continuously sought approval to create a twenty-four lot subdivision on the property. Therefore, the Court finds that administrative finality applies here and that Beechwood's second application is barred unless Beechwood demonstrates a material change in circumstances.
 The Commission's Application of the Doctrine
Intervenors first argue that the majority of the Commission erred on July 6, 2006, by finding that the successive applications are not identical instead of finding that they are not *Page 27 
substantially similar. Intervenors point to statements made by Commission Members Bemis and Ulricksen which allegedly demonstrate that they misapplied the standard. Intervenors also argue that Chairman Rohm voted to allow the application to proceed simply because he disagreed with certain findings of fact that served as the basis of the Commission's previous denial of Beechwood's original application in its entirety.
Contrary to Intervenors' assertions that the Commission applied an incorrect "identical" standard, a review of the transcript of the Commission's July 6, 2006, hearing shows that it explicitly found that the two applications were not substantially similar.[10] Indeed, Mr. Ulricksen made the actual motion that the Commission approved, stating that "this application is not substantially similar, nor is it identical because the elimination of the stump dump constitutes a major material change in circumstances." Mr. Bemis seconded the motion, indicating that he agreed with the wording used by Mr. Ulricksen. Finally, both Mr. Ulricksen and Mr. Bemis, along with Chairman Rohm, voted to approve that motion.
While Mr. Ulricksen's motion contained language indicating that the applications were not "identical," it also plainly stated that the application is not "substantially similar" to the one that had previously been denied. Significantly, the motion used the conjunctive "nor," thereby indicating that the majority was in reality making two separate findings; (1) that the applications are not substantially similar, and (2) that the applications are not identical. Although the Commission could perhaps have avoided any confusion as to whether it had properly enunciated the standard for administrative finality by omitting a finding that the two applications are not identical, it is nevertheless clear to this Court that the majority of the Commission found that the *Page 28 
two applications are not substantially similar.[11] Therefore, after a review of the entire record, the Court finds that the Commission properly enunciated the standard to be applied to the doctrine of administrative finality.
Notwithstanding the Commission's proper enunciation of the standard, Intervenors argue that the transcript demonstrates that the majority improperly used an identical standard. However, a reading of the entire transcript of the Commission's proceedings shows that Chairman Rohm clearly informed Commission members that the matter was back before them because the Board felt they had applied an incorrect identical standard in their earlier proceedings. The Chairman stated that the Commission's task was to determine whether the two applications are substantially similar and he told the Commission that they could only allow the application to proceed if they could "come to terms" with a finding that it is not substantially similar to the one that had previously been denied.
Although at one point Chairman Rohm did express his opinion that he may not have agreed with findings made in earlier proceedings, the transcript reveals that the Chairman focused on the differences between the current application and the one that had previously been denied, rather than on any factual findings as to the buffer that he believed to be erroneous.[12] After a review of the entire record, the Court finds that Chairman Rohm properly focused on a comparison of the Beechwood's second application to its original application. It does not appear from anything in the transcript that Chairman Rohm cast his vote based on his disagreement with *Page 29 
earlier factual findings. Thus, the Court is satisfied that Intervenors' contention that Chairman Rohm did not apply the correct standard is without merit.
Turning to Mr. Ulricksen's vote, Intervenors have argued that his statement that the applications are not substantially similar once the stump dumps have been removed, "regardless of what it looks like," demonstrates that he erroneously failed to consider whether the required one-hundred foot barrier actually provides a sufficient audio/visual buffer after taking into account Beechwood's clearing activities. This argument is without merit as the adequacy of the buffer was not before the Commission. As the Chairman reminded the Commission multiple times, the only question before the Commission at this stage was whether Beechwood's second application was barred by the doctrine of administrative finality. Bearing in mind that a sufficient "internal change" in the application allows the Commission to ultimately reach a conclusion that differs from a previous one, the Court finds that Mr. Ulricksen properly restricted his focus to the content of the application itself. Given that Mr. Ulricksen opined that "if you take those three stump dumps out that is a big material change" in the application, and that he ultimately introduced the motion finding the applications not substantially similar, this Court is satisfied that Mr. Ulricksen did not apply an incorrect standard.
Finally, Intervenors argue that Mr. Bemis also used an erroneous identical standard, bringing the Court's attention to his statements that "[i]f you take them out [the stump dumps], how can you call them the same" and "[y]ou've eliminated what was supposedly the problem, so how can you call it the same?" as evidence that he misconstrued the question before the Commission. While Mr. Bemis did make those statements, he did so in the context of comparing the successive applications to one another to determine whether and to what extent the second application differed from the first. Moreover, it must be pointed out that Mr. Bemis stated that *Page 30 
he agreed with Mr. Ulricksen — after Mr. Ulricksen had said that he did not find the applications to be substantially similar. Finally, Mr. Bemis seconded Mr. Ulricksen's motion finding that the applications were neither substantially similar nor identical, indicating his continued agreement with that position. Thus, after a review of the entire transcript of the Commission's July 6, 2006, hearing, this Court is not convinced that Mr. Bemis applied an incorrect standard for administrative finality.
Turning to the other two members of the Commission, Dr. Johnson stated that "[h]aving read the zoning board's decision, I still feel the new application is substantially similar to the original application, it's just not identical." He further opined that "[r]emoving the dump stump [sic] is a great start, but the access road is still next to the abutter and the emergency access road. The retention basins are all still in the buffer area, so the lack of an audiovisual buffer still makes this a substantially similar situation to the previous applications." Clearly then, Dr. Johnson applied the correct standard for administrative finality and after comparing Beechwood's two applications, concluded that the removal of the stump dumps from the second application did not constitute a sufficient internal change so as to constitute a material change of circumstances. Obviously, the majority of the Commission disagreed with Dr. Johnson's conclusion.
Ms. Platner was the other member of the Commission who felt that the second application was substantially similar to the first. A review of her comments and proposed findings of fact indicates that she was concerned with the facts as they existed on the property at that moment in time. For example, she stated that in her opinion a material change "would be to address the abutter's concerns for an audio and visual buffer and show a perimeter buffer without large areas of clearing, both on the plans and on the ground." She also stated that Beechwood's removal of the stump dumps from its proposal "did not cause the forest to regrow." In short, Ms. *Page 31 
Platner's inquiry focused on the second prong of the standard for administrative finality-whether or not Beechwood had demonstrated a substantial change in the exterior circumstances surrounding the application.
Although a determination of whether there has been a substantial change in relevant external circumstances is proper and necessary in deciding whether administrative finality bars a subsequent application, the Court is troubled that Ms. Platner apparently based her vote on allegations of clearing activities that were not made part of the record. While it is undisputed that the Town did issue Beechwood several notices of violation for commencing tree removal and road bed construction, none of the notices indicates that any tree removal has occurred within the buffer zone. Although Ms. Platner stated that she lived in the area, she did not explicitly state whether she had been to the property and seen the alleged clearing activities for herself. The personal knowledge of zoning board members does constitute competent evidence, but only where the members disclose on the record both the facts known to them and the conclusions that they have drawn from those facts. Sciacca v. Caruso, 769 A.2d 578, 585 (R.I 2001); see alsoDestefano v. Zoning Bd. of Rev. of Warwick, 122 R.I. 241, 247,405 A.2d 1167, 1171 (1979). Ms. Platner's statements on the record fall short of the required disclosures when a Commission member relies on his or her personal knowledge.
It also appears that Ms. Platner relied on aerial photographs of the property that are available on the internet but were never authenticated or introduced into evidence. The transcript of the Commission's hearing does not disclose that copies of these photographs were shown to Beechwood and Intervenors, or even whether the other Commission members had viewed them. While the Court is cognizant that "in zoning matters, a reviewing board is not required to strictly comply with the rules of evidence," the Court questions whether a Commission member's *Page 32 
reliance on photographs which have apparently not been provided to the parties or to other members of the Commission "affords a fair and impartial hearing to both parties." Caswell v. George Sherman Sand Gravel Co., 424 A.2d 646, n. 4 (R.I. 1981) (internal citations omitted). However, further comment on these issues is unnecessary at this time because Ms. Platner was the only member to consider the external circumstances on the property, and as such her vote was not the one that decided the issue.
To sum up, the Court finds that all three of the majority members limited their inquiry to a comparison of Beechwood's two applications. Unlike Ms. Platner, the majority members did not concern themselves with actions that may or may not have taken place on the property in the intervening time between the applications. This type of limited inquiry is permissible under the doctrine of administrative finality when an agency reviews an application to determine whether it demonstrates a sufficient internal change so as to constitute a material change in circumstances. The record is clear that this is precisely what the majority of the Commission did here. Therefore, the Court finds that on July 6, 2006, the Commission properly articulated and applied the legal standard for the doctrine of administrative finality to Beechwood's application. It follows — and the Court so finds — that the Board committed an error of law when it found in its November 9, 2006, decision that the Commission had committed clear error by applying an incorrect legal standard.
 Material Change in Circumstances
While this Court is satisfied that the Commission did in fact correctly articulate and apply the proper standard for administrative finality when it voted to allow Beechwood's second application on July 6, 2006, the Court must still determine whether its finding of a material change in circumstances was justified by competent evidence in the record. As set forth above, *Page 33 
the Court has found that the majority of the Commission voted to allow the application to proceed because they believed that Beechwood's second application demonstrated an internal change sufficient to constitute a substantial change of circumstances. Thus, the Court's inquiry is limited to a search of the record before the Commission in order to determine whether its conclusion was supported by the weight of the evidence in the record. See § 45-23-70(a) (prohibiting the Board from overturning a decision of the Commission "except on a finding of prejudicial procedural error, clear error, or lack of support by the weight of the evidence in the record."); see also § 45-23-71(c) ("[t]he court shall not substitute its judgment for that of the planning board as to the weight of the evidence on questions of fact").
The record of the Commission's July 6, 2006, vote to allow the second application to proceed reveals that the Commission was aware of and carefully considered its original denial of Beechwood's first application in October 25, 2004, after the matter had been remanded from Superior Court. The majority members stated that this denial had been on the basis of the planned stump dumps within the buffer zone, while Dr. Johnson and Ms. Platner were of the opinion that the Commission's grounds for denial were broader in that they encompassed the buffer as a whole rather than just the stump dumps. Dr. Johnson and Ms. Platner pointed out that the Superior Court had remanded the matter for findings of fact as to the buffer issue and did not limit further proceedings to the stump dumps alone.
This Court has examined the Decision issued by the Court in September 2004, as well as the transcripts of all of the Commission's subsequent proceedings and finds that they speak for themselves. That Court remanded the matter "for findings of fact as to the buffer issue," (emphasis in original) clearly indicating that the Commission was authorized to make findings as to any facts that would have an impact on the buffer's ability to serve as an audio/visual barrier. *Page 34 
Taking up the remand, the Commission on October 25, 2004, specifically found that the creation of stump dumps in the one-hundred foot buffer would strip the buffer of trees and vegetation, thereby permanently degrading the perimeter buffer. The Commission also found that Beechwood's proposal would do nothing to rectify the damage to the buffer as it called for reseeding the area with grass rather than replacing the mature trees that would be cut down. Adopting language suggested by the Court, the Commission concluded that creation of the stump dumps within the perimeter area would be "so visually obtrusive as to constitute a permanent and recognizable disfigurement upon the landscape, and will not function as a visual screen."
The Commission also made a finding that "drainage easements, and emergency access in the 100 foot wooded perimeter buffer does not provide a visual and audio buffer to the abutting property." Significantly, the Commission did not make any findings that structures located within the buffer as part of the drainage easements would "vitiate the intended purposes of the perimeter buffer" as set forth in the Superior Court Decision. See Sprague v. Charlestown Zoning Board ofReview, WC/2002-0254 and WC/2002-0255, 2004 R.I. Super. LEXIS 166, *46 (2004). Neither did the Commission make any factual findings as to the impact of proposed emergency access on the efficacy of the buffer. Rather, the Commission's ultimate finding demonstrates that, although it may have also been concerned about drainage easements and emergency access, it denied the application on October 25, 2004, because "the planned stump dump will be so visually obtrusive" as to render the required buffer inadequate. Thus, it plainly appears to the Court that Beechwood's proposal to locate stump dumps within the perimeter buffer was dispositive as it provided the sole basis for the Commission's decision to deny its proposal. The Commission's denial on that basis was upheld by the Board on Beechwood's appeal, and Beechwood did not exercise its right to further appeal to this Court. *Page 35 
Given this background, the Court is unable to say that the majority of the Commission members' conclusion on July 6, 2006, that the October 25, 2004, denial was premised on the proposed location of stump dumps within the buffer was against the weight of the evidence. The evidence before the Commission showed that Beechwood's second application would not create stump dumps in the buffer area. The members of the majority indicated that the removal of the stump dumps from the plans constituted a material change internal to the application and, therefore, Beechwood's application was not barred by administrative finality.
Were the Board on appeal to examine for itself all of the evidence that the Commission had before it, the Board could conceivably reach a different result — just as Dr. Johnson did. However, in reviewing the sufficiency of the evidence before the Commission, the role of the Board is not to substitute its judgment for that of the Commission. Section 45-23-70(a). Rather, the Board is limited to determining whether the Commission's decision was contrary to the "weight of the evidence in the record." Id. Thus, the Board is not empowered to overturn a decision of the Commission simply because the Board disagrees or would have made a different determination.
The Court notes that the Board's appellate responsibilities in this case are similar to those placed upon this Court when it reviews decisions made by municipal zoning boards or other agencies. This Court is similarly prohibited from reviewing all of the evidence adduced before the agency and drawing its own conclusions. Johnston AmbulatorySurg. Assoc., 755 A.2d at 812 ("[I]t is not the role of this Court . . . to engage in such an analysis."). Like the Board here, this Court's review of an agency's decision "is limited to a determination of whether there was sufficient competent evidence to support the findings made by the administrative agency." Id. Moreover, when reviewing an administrative agency's finding that an application is not barred *Page 36 
by administrative finality, if that agency "has made a finding of fact that there had been a material change in circumstances and pointed to evidence to support that finding, a trial justice would likely abuse his or her discretion by independently reviewing the evidence and rejecting the [agency's] finding." Id. at 813. Because the Board is required to defer to the Commission's factual findings in the same way that this Court must afford deference to an administrative agency's findings of fact, this Court's review of the Board's decision is informed by the general principles set forth above.
Given the long history of this case and the extensive discussions at prior proceedings focusing on the effect of the stump dumps on the audio/visual barrier, this Court is satisfied that the Commission was presented with sufficient competent evidence to allow it to conclude that the removal of the stump dumps from Beechwood's plans constituted a sufficient internal change to allow the application to proceed. The Court's review of the transcript of the Commission's July 6, 2006, hearing reveals that the majority of the Commission identified the evidence upon which they had based their decision by making explicit reference to prior proceedings and the concerns expressed therein. Therefore, the Court finds that reversing the Commission's decision would require the Board to undertake its own independent review of the evidence and thereafter reject the Commission's findings. It follows that the Board impermissibly "substitute[d] its own judgment for that of the planning board" in contravention of § 45-23-70(a) when it rendered its November 9, 2006, decision reversing the Commission's finding that there had been a material change in Beechwood's application.
As this Court has previously stated, the Board is authorized to reverse a decision of the Commission only "on a finding of prejudicial procedural error, clear error, or lack of support by the weight of the evidence in the record." Section 45-23-70(a). Thus, the Court additionally *Page 37 
finds that by substituting its judgment for that of the Commission, the Board acted in excess of its statutory authority. Zeilstra v. BarringtonZoning Bd. of Rev., 417 A.2d 303, 309 (R.I. 1980) ("Zoning boards are creatures of statute; hence they possess only the powers, rights, duties, or responsibilities conferred upon them by the Legislature.").
 Additional Considerations
The Court stresses that its Decision today addresses only the narrow issue of whether on July 6, 2006, the Commission was presented with competent evidence to support its finding that Beechwood's second application to create a twenty-four lot subdivision demonstrated an internal change sufficient to constitute a material change in circumstances. Thus, the Court finds only that the doctrine of administrative finality does not bar the consideration of Beechwood's second application for subdivision approval. The Court makes no findings as to the allegations that Beechwood has engaged in clearing activities on the property, nor does it inquire further into the current state of the one-hundred foot perimeter around the property.
Going forward, Beechwood is still required to demonstrate to the satisfaction of the Commission that the buffer area around the property is sufficient to provide an audio/visual buffer that will protect the abutters. Any evidence as to Beechwood's clearing and vegetation removal activities in the buffer area may be relevant to the final determination of the adequacy of the buffer or to a finding that land has been environmentally disturbed or damaged within the meaning of Ordinance § 218-60.H.(2). As with any other subdivision application, only if Beechwood demonstrates to the Commission's satisfaction that it has fulfilled all of the applicable requirements imposed both by state law and the Ordinance shall it be entitled to *Page 38 
approval of its application. Such issues are not currently before this Court however, and are properly left to the Commission's determination in the first instance.[13]
Finally, the Court recognizes that this case presented challenging issues of law to both the Commission and the Board. Although the Court finds that the Board's November 9, 2006, decision must be reversed, the Court's review of the entire history of this case demonstrates that the Board and the Commission have diligently attempted to carry out their duties in accordance with the law. Each body has held multiple hearings during which it heard and considered extensive legal arguments on complex questions of law, and it is clear from the Court's reading of the transcripts that Board and Commission members have seriously considered the legal issues before rendering their decisions. It is highly commendable that members of both the Board and the Commission have sought out and relied upon the advice of their solicitors when confronted with difficult legal issues. That Board and Commission members have clearly articulated their basis for making various decisions has further assisted this Court in its review. The Court expresses its hope and expectation that the Board and the Commission will continue to so conscientiously discharge their duties as this case moves forward.
 Conclusion
Given all of the foregoing, the Board's November 9, 2006, decision remanding Beechwood's subdivision application to the Commission is reversed. The Court finds that the Board's decision was affected by an error of law to the extent that the Board incorrectly determined that the Commission had used the wrong standard when it purported to apply the doctrine of administrative finality. Furthermore, this Court is satisfied that the Commission's *Page 39 
July 6, 2006, decision finding that Beechwood's second application is not substantially similar to the first was not against the weight of the evidence. As such, the Board impermissibly substituted its judgment for that of the Commission when it rendered its November 9, 2006, decision. Substantial rights of Beechwood have been prejudiced.
This matter is hereby remanded to the Commission for further proceedings consistent with this Decision and Beechwood's appeal of the Board's August 22, 2007, decision is dismissed as moot.[14]
Counsel for Beechwood shall submit an appropriate order for entry in accordance with this Decision on or before August 27, 2008.
[1] The appeals were docketed as C.A. No. WC-2002-0254 and C.A. No. WC-2002-0255 and subsequently consolidated.
[2] The Court notes that Final Judgment was not entered until June 28, 2005. The parties have not come forward with any explanation for the nearly ten month gap between the Court's written decision and the entry of Final Judgment.
[3] Beechwood would have had to file an appeal on or before January 16, 2005, in order to comply with the statute.
[4] According to site plans submitted by Beechwood, a church is located on an abutting lot. (See Exhibit 3.)
[5] The Board further found that the Commission had also improperly voted to combine the master plan and preliminary plan stages of review after it allowed Beechwood's application to proceed. This aspect of the Zoning Board's decision has not been appealed and is therefore not before the Court.
[6] Ms. Fabre had replaced Mr. Bemis on the Commission.
[7] Contrast this language with that found in the Administrative Procedures Act limiting judicial review to a "final order" or any other order "in which review of the final agency order would not provide an adequate remedy." Section 42-35-15(a). The Development Review Act quite clearly does not contain such a limitation. Therefore there is no merit to Intervenors' argument that an appeal from a decision remanding the matter to the Commission for further proceedings is improper.
[8] Although Intervenors have asserted generally that Beechwood did not suffer any concrete injury as a result of the Board's November 9, 2006, decision as it only remanded the case for further proceedings, they have not argued that Beechwood does not constitute an "aggrieved party" for purposes of § 45-23-71(a). As the applicant for relief, this Court would be hard-pressed to see how Beechwood would not be aggrieved by any decision with which it disagrees. See §§ 45-23-32 and45-24-31(4).
[9] Significantly, the Board can effectively deny a petition to amend the Ordinance if the Town Council grants an amendment conditioned on the applicant's obtaining "a permit or approval from any and all state and local government agencies having jurisdiction over the land and use which are the subject of the zoning change." Ordinance § 218-17A.
[10] The record does not contain a written decision containing findings of fact reflective of the Commission's July 6, 2006, vote. Because no party has mentioned the absence of such a written decision, it is not clear to this Court whether the Commission failed to reduce its vote to a written decision or whether the parties have simply not submitted a copy of the Commission's decision. The Court need not inquire further, as it finds that the transcript of its July 6, 2006, hearing is more than sufficient to allow a review of the Commission's basis for its decision.
[11] The Court notes that these two findings are not in conflict with each other. An application that is not substantially similar to a previous one is also by definition not identical to that earlier application. While the Commission's inclusion of the finding that the applications are not "identical" may have been regrettable, it does not by itself demonstrate that the Commission applied the wrong legal standard.
[12] Referring to the findings of fact supporting the Commission's denial of Beechwood's application on October, 25 2004, Chairman Rohm stated that "those aren't necessarily findings of fact that I agree with." This statement, standing alone as it does, fails to demonstrate that Chairman Rohm did not feel bound by those findings or that he disregarded them in any way.
[13] In addition, although the parties have separately argued that the doctrine of res judicata applies to certain facts found earlier in the subdivision application process, the Court finds that the doctrine is not relevant to the narrow question before it. The Court declines to make any ruling regarding the res judicata effect of other issues that have been litigated in previous proceedings.
[14] Given the procedural history of this case, the Court wishes to be perfectly clear and ensure that all parties understand that the Court is not retaining jurisdiction over this case. *Page 1